UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(In Chambers:)** DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (Dkt. #221, filed October 7, 2013)

DEFENDANTS' MOTION FOR A NEW TRIAL (Dkt. #222, filed October 7, 2013)

## I.      INTRODUCTION

Plaintiff Troy Dugan filed this action on September 30, 2011, and filed a first amended complaint ("FAC") on December 12, 2011. The remaining defendants in this action are Los Angeles County Sheriff's ("LACS") Deputy Brett Binder ("Binder"), former LACS Deputy Christopher Nance ("Nance"), and LACS Sergeant John Stanley ("Stanley").

A jury trial in this matter on the issue of liability concluded on August 5, 2013. Plaintiff asserted claims for excessive force and unlawful arrest under 42 U.S.C. § 1983 against defendants Nance and Binder, and asserted a claim for malicious prosecution under 42 U.S.C. § 1983 against all defendants. Dkt. #200. The jury returned a special verdict in favor of plaintiff, and awarded $850,000 in compensatory damages. Id. The special verdict form reads as follows:

QUESTION NO. 1
Do you find by a preponderance of the evidence that either, or both, of the following defendants seized plaintiff Troy Dugan without probable cause, or failed to stop another deputy from seizing plaintiff Troy Dugan without probable cause?

|  |  |  |
|---|---|---|
| Christopher Nance | Yes__x__ | No_____ |
| Brett Binder | Yes__x__ | No_____ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

QUESTION NO. 2
    If you find that either, or both, of defendants Christopher Nance and Brett Binder seized plaintiff Troy Dugan without probable cause, or failed to stop another deputy from seizing plaintiff Troy Dugan without probable cause, are Christopher Nance, Brett Binder, or both entitled to the defense of qualified immunity as to this claim?

        Christopher Nance      Yes\_\_\_\_    No\_\_x\_\_
        Brett Binder            Yes\_\_\_\_    No\_\_x\_\_

QUESTION NO. 3
    If you find that either, or both, of defendants Christopher Nance and Brett Binder seized plaintiff Troy Dugan without probable cause, or failed to stop another deputy from seizing plaintiff Troy Dugan without probable cause, was the conduct malicious, oppressive, or in reckless disregard of plaintiff's constitutional rights?

        Christopher Nance      Yes\_\_x\_\_    No\_\_\_\_
        Brett Binder            Yes\_\_x\_\_    No\_\_\_\_

QUESTION NO. 4
    Do you find by a preponderance of the evidence that either, or both, of the following defendants used excessive force against plaintiff Troy Dugan?

        Christopher Nance      Yes\_\_x\_\_    No\_\_\_\_
        Brett Binder            Yes\_\_x\_\_    No\_\_\_\_

QUESTION NO. 5
    If you find that either, or both, of defendants Christopher Nance and Brett Binder used excessive force against plaintiff Troy Dugan, are Christopher Nance, Brett Binder, or both entitled to the defense of qualified immunity as to this claim?

        Christopher Nance      Yes\_\_\_\_    No\_\_x\_\_
        Brett Binder            Yes\_\_\_\_    No\_\_x\_\_

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | | Date | December 16, 2013 |
|---|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | | |

QUESTION NO. 6
    If you find that either, or both, of defendants Christopher Nance and Brett Binder used excessive force against plaintiff Troy Dugan, was the conduct malicious, oppressive, or in reckless disregard of plaintiff's constitutional rights?

        Christopher Nance        Yes__x__    No____
        Brett Binder        Yes__x__    No____

QUESTION NO. 7
    Do you find by a preponderance of the evidence that any, or all, of the following defendants caused plaintiff Troy Dugan to be subjected to criminal prosecution in violation of his Fourth Amendment civil rights?

        Christopher Nance        Yes__x__    No____
        Brett Binder        Yes__x__    No____
        John Stanley        Yes__x__    No____

QUESTION NO. 8
    If you find that any, or all, of defendants Christopher Nance, Brett Binder, and John Stanley caused plaintiff Troy Dugan to be subjected to criminal prosecution in violation of his Fourth Amendment civil rights, are any Christopher Nance, Brett Binder, and John Stanley, or any of them, entitled to the defense of qualified immunity as to this claim?

        Christopher Nance        Yes____    No__x__
        Brett Binder        Yes____    No__x__
        John Stanley        Yes____    No__x__

QUESTION NO. 9
    If you find that any, or all, of defendants Christopher Nance, Brett Binder, and John Stanley caused plaintiff Troy Dugan to be subjected to criminal prosecution in violation of his Fourth Amendment civil rights, was the conduct malicious, oppressive, or in reckless disregard of plaintiff's constitutional rights?

        Christopher Nance        Yes__x__    No____
        Brett Binder        Yes__x__    No____
        John Stanley        Yes__x__    No____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

QUESTION NO. 10
       What is the amount of damages, if any, that plaintiff incurred as a result of defendants' conduct?

       Damages:   <u>$850,000</u>

       A jury trial on the issue of punitive damages concluded on August 20, 2013, and the jury awarded punitive damages of $50,000 per defendant, for a total of $150,000. Dkt. #215.

       Prior to the jury returning its verdict in the liability phase of the trial, defendants filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). Dkt. #189. The Court reserved judgment on the motion. Dkt. #192. Defendants renewed their motion on October 7, 2013, pursuant to Federal Rule of Civil Procedure 50(b). Dkt. #221. Plaintiff filed an opposition on October 21, 2013, dkt. #224, and defendants replied on October 28, 2013, dkt. #225.

       Defendants filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59 on October 7, 2013. Dkt. #222. Plaintiff filed an opposition on October 21, 2013, dkt. #223, and defendants replied on October 28, 2013, dkt. #226. The Court held a hearing on November 18, 2013. The Court thereafter took this matter under submission. After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

       The following is a brief summary of the evidence adduced at trial. This summary is not comprehensive, but instead provides a general overview of the background of this action.[1] To the extent that additional evidence is relevant to the consideration of defendants' motions, that evidence is discussed in the context of defendants' individual arguments in support of their motions.

---

       [1] Since the parties did not order a complete transcript of the trial proceedings, the Court cites to a rough transcript that is on file with the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

### A.    Plaintiff's Testimony

Plaintiff testified that his friend and former roommate Esther Robbins called him on October 3, 2009.  RT 62 (July 30, 2013).  Robbins asked plaintiff to come over and help her move out of her apartment.  Id.  When plaintiff arrived at Robbins' apartment, Robbins' landlord, Paula Boyd, was removing Robbins' belongings from the apartment and placing them on the front lawn.  Id. at 63-64.  Plaintiff told the landlord that it was against the law for her to remove Robbins' belongings in this manner.  Id. at 64.  Robbins told plaintiff that she would speak with the landlord alone, so plaintiff went into Robbins' bedroom and sat down in a lawn chair to watch television.  Id.  Shortly thereafter, Boyd entered the bedroom and tried to remove a suitcase.  Id. at 65.  Plaintiff laid his hand on the suitcase to prevent the Boyd from removing it.  Id.  Boyd informed plaintiff that the police were on their way to resolve the apparent landlord-tenant dispute between Robbins and Boyd.  Id. at 66.  Plaintiff remained in the bedroom to await the arrival of the police.[2]  Id.

Two sheriff's deputies, defendants Nance and Binder, arrived at the apartment and entered the bedroom where plaintiff was waiting.  Id. at 71-72; 98-99.  Binder had his firearm drawn.  Id. at 71.  He instructed plaintiff to stand up.  Id.  Plaintiff placed his hands on his head.  Id.  Binder then holstered his firearm and pulled out his pepper spray, and instructed plaintiff to stand up again.  Id. at 71-72.  Plaintiff attempted to stand up at that point.  Id. at 72.  Plaintiff testified that he has knee and back problems that make it difficult for him to get up from chairs quickly.  Id. at 73.  Nance, who was standing next to Binder, offered a hand to plaintiff to help him stand up.  Id. at 74-75.  Plaintiff responded that he could stand up on his own.  Id.  Plaintiff testified that Binder then used the pepper spray on plaintiff's face and eyes.  Id. at 75.  Plaintiff then fell back in his chair, and as he tried to stand up once more, he was struck with something "very hard."  Id.  Plaintiff testified that, after he was struck the first time, the two deputies grabbed him, and one of them jumped on his back.  Id. at 77.  Plaintiff testified that he felt as though he was kicked and struck several more times.  Id. at 77-78.  The deputies then handcuffed plaintiff and dragged him from the bedroom to the living room of the

_____

[2] Plaintiff testified that he did not make any threatening statements to anyone, including Boyd, prior to the arrival of the police.  Id. at 67-68.  Plaintiff also denied saying that he was going to call his "boys" and have them come to the apartment.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

apartment.  Id. at 78-79.  Plaintiff was bleeding from his head during this time.  Id.
Plaintiff testified that he never said anything threatening to the two deputies, and did not
resist their efforts to handcuff him.  Id. at 81; 105.[3]

Plaintiff testified that the paramedics arrived soon after this encounter, and took
him to Huntington Memorial Hospital in Pasadena.  Id. at 81-82.  After plaintiff was
treated at the hospital, he was taken to a sheriff's substation.  Id. at 84.  Shortly thereafter,
plaintiff was taken to the Los Angeles "men's central jail."  Id.  He was then shown a
misdemeanor complaint documenting the charges against him.  Id.; Ex. 24.[4]  The charges
included making criminal threats, in violation of Cal. Penal Code § 422, and resisting
arrest, in violation of Cal. Penal Code § 69.  Those charges were dismissed approximately
eighteen months later.  Id. at 86; Ex. 31.  Plaintiff testified that he had asked for a trial on
those charges.  RT 86 (July 30, 2013).

### B.    Binder's Testimony

Deputy Binder testified that he and Deputy Nance were dispatched to Robbins'
apartment on October 3, 2009, in order to address a landlord-tenant dispute.  RT 58, 60
(Aug. 1, 2013).  While Binder was en route to the apartment, the call was updated to
reflect a report that someone at the scene had made criminal threats.  Id. at 60.  After
arriving at the apartment, Binder and Nance spoke to Robbins' landlord, Paula Boyd.  Id.
at 62.  Boyd stated that plaintiff had threatened her by stating that he was going to "call
his boys and have his boys come over" in order to stop Boyd from evicting Robbins and
changing the locks.  Id.  Boyd also stated that plaintiff threatened to hurt her when she
entered Robbins' bedroom to remove a suitcase.  Id. at 62-63.  Boyd stated that, after
plaintiff threatened her, she left the apartment and called 911.  Id. at 128.[5]

---

[3] Plaintiff later testified that Deputy Binder struck him first, but that, after he was
sprayed with pepper spray, he was not sure who was hitting him.  Id. at 98-99.

[4] All citations to "Ex." refer to exhibits introduced at trial.

[5] At this point in Binder's testimony, plaintiff's counsel published to the jury an
exhibit, admitted by stipulation, that no audio recording of a 911 call from Boyd is
known to exist.  RT 128-34 (July 30, 2013) (citing Ex. 32).  Binder testified that 911 calls
are recorded.  Id. at 134.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*O*

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

Binder testified that he and Nance then entered the apartment and walked to the bedroom in which plaintiff was seated. Id. at 64. Binder testified that his gun was holstered. Id. Binder stated that plaintiff appeared angry. Id. at 65. Binder instructed plaintiff to stand up, and plaintiff replied, "no." Id. at 66-67. Binder then removed his pepper spray from his gun belt. Id. at 67. Binder stated that he would spray plaintiff if he did not stand up. Id. at 68-69. Binder then sprayed plaintiff with the pepper spray. Id. at 69. According to Binder, the pepper spray had no effect on plaintiff. Id. at 71. Binder stated that plaintiff then tried leave the chair and strike him, and Binder responded by stepping back and striking plaintiff three times in the face. Id. Binder testified that he determined it was necessary to remove plaintiff from the chair. Id. at 72. Binder and Nance then attempted to remove plaintiff from the chair and place him on the ground. Id. at 72-73. During this process, Nance, Binder, and plaintiff all fell to the ground. Id. at 73-75. Binder and Nance then took plaintiff to the living room. Id. at 75. Shortly thereafter, Nance and Binder left the scene. Id. at 78-79. Binder testified that he prepared a supplemental report regarding the incident, and that Nance prepared the primary report regarding the encounter. Id. at 76-77.[6]

**C.    Stanley's Testimony**

Stanley testified that he was responsible for supervising Nance and Binder on the evening of October 3, 2009. RT 4 (July 31, 2013). Stanley responded to the scene at Robbins' apartment after Nance and Binder's encounter with plaintiff in order to conduct an investigation. Id. at 5. This investigation included conducting a video interview of Robbins. Id. at 5-6. The audio track for the interview of Robbins is inaudible. Id. at 6. Stanley also took a total of five photographs, and approximately 30 seconds of video of the scene. Id. at 7-11. Stanley also conducted a video interview of plaintiff in the hospital later in the evening on October 3, 2009. Id. at 12. Like the Robbins interview, the audio track for that interview is inaudible. Id. Stanley stated that he interviewed Nance and Binder, but did not record those interviews, or take notes during them. Id. at 13-14. Stanley testified that he would have been required to notify internal affairs if plaintiff had been hit on the head with a pepper spray cannister. Id. at 16. Stanley also

---

[6] For the purposes of these motions, Nance's testimony was substantially similar to Binder's. Therefore, in the interest of brevity, the Court does not separately summarize Nance's testimony.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | | Date | December 16, 2013 |
|---|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | | |

stated that he approved Nance and Binder's reports of the incident at Robbins' apartment. Id. at 16-17.

## III.   DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.   LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 139, 149 (2000). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. Fed. R. Civ. P. 50(b).  It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment.  Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested.  See Fed. R. Civ. P. 56(c).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$0$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (articulating the same standard in the context of a directed verdict). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995)). In other words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

**B.   DISCUSSION**

1.   The Malicious Prosecution Claim

To prevail on a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show that the defendant initiated proceedings against him with malice and without probable cause, and did so for the purpose of denying him a constitutional right. Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004). In addition, a malicious prosecution plaintiff must show that the proceedings "terminated in such a manner as to indicate his innocence." Id. (citation omitted). Defendants argue that plaintiff's claim for malicious prosecution fails as a matter of law because (1) plaintiff failed to prove a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

favorable termination of the criminal proceeding against him in the Los Angeles County Superior Court, (2) plaintiff failed to rebut the presumption of prosecutorial independence, (3) plaintiff presented "no evidence" of malice on the part of defendants, and (4) probable cause existed to initiate the criminal proceeding against him.  Mot. J. Matter of Law ("Mot. JMOL") 3-13.  The Court addresses each of these arguments in turn.

              a.     Failure to Prove Favorable Termination

       When the termination of a criminal proceeding occurs by means other than a trial, "the termination must reflect on the merits of the case and the malicious prosecution plaintiff's innocence of the misconduct alleged in the underlying lawsuit."  Daniels v. Robbins, 182 Cal. App. 4th 204, 216 (2010).  The relevant inquiry when evaluating a termination of a proceeding prior to trial is whether the termination "reflected the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant."  Stanley v. Superior Court, 130 Cal. App. 3d 460, 464-65 (1982).  In Minasian v. Sapse, for example, the court reasoned that a dismissal of a civil action for failure to prosecute can constitute a favorable termination because "one does not simply abandon a meritorious action once instituted."  80 Cal. App. 3d 823, 832 (1978).  When the circumstances of such a dismissal prior to trial are unclear, the question as to whether the dismissal reflected the merits of the case is one of fact, to be resolved by a jury.  Id. ("Should a conflict arise as to the circumstances explaining the failure to prosecute, the trier of fact must exercise its traditional role in deciding the conflict."); Sycamore Ridge Apartments, LLC v. Naumann, 157 Cal. App. 4th 1385, 1399 (2007) (stating that the issue of whether the termination was favorable is a question of fact if the circumstances of the termination are "conflicted."); see also Awabdy, 368 F.3d 1068 ("When . . . a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining his action unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt.").[7]

_____

       [7] While the Court instructed the jury that the burden was on plaintiff to prove that the proceedings terminated in his favor, see Jury Instructions (Given) at 23, dkt. #195, the Awabdy court's statement confirms that whether a favorable termination has occurred is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

Here, the Court instructed the jury that the proceedings against plaintiff terminated pursuant to Cal. Penal Code § 1382 "because the state prosecutors did not timely bring the criminal proceedings against plaintiff to trial." Jury Instructions (Given), dkt. #195 at 23. Cal. Penal Code § 1382 states that the court must dismiss an action if the prosecution fails to bring the action to trial within a specified period. A dismissal under this section is therefore analogous to the dismissal for failure to prosecute in <u>Minasian</u>, 80 Cal. App. 3d at 832. Accordingly, the question of whether the proceedings were terminated in plaintiff's favor was a question of fact properly left to the jury. <u>Cf.</u> <u>Estate of Richardson ex rel. Brown v. Kanouse</u>, 2013 WL 5315374, at *5 (C.D. Cal. Sept. 19, 2013) (granting summary judgment to defendant on malicious prosecution claim when underlying action was dismissed pursuant to Penal Code § 1382 based on lack of genuine factual dispute as to whether proceeding was resolved in the plaintiff's favor).[8]

Defendants resist this conclusion, arguing that a dismissal of proceedings pursuant to this penal code section cannot satisfy the element of favorable termination because such a dismissal occurs on procedural grounds, and therefore does not indicate the plaintiff's innocence. Mot. JMOL 4-8. The Court is unpersuaded by this argument. Defendants rely primarily on <u>Garber v. Heilman</u>, 2009 WL 409957, at *10 (C.D. Cal. Feb. 18, 2009) (granting defendant's motion to dismiss malicious prosecution claim because dismissal pursuant to Cal. Penal Code § 1382 "is not inconsistent with . . . guilt"), and <u>Kanouse</u>, 2013 WL 5315374, at *5, in support of their argument, both of which are inapposite.

In <u>Garber</u>, the court granted defendants' motion to dismiss a malicious prosecution claim asserted under 42 U.S.C. § 1983. 2009 WL 409957, at *10. The court found that plaintiff failed to allege that the proceedings terminated in a manner inconsistent with his guilt. <u>Id.</u> In this regard, plaintiff alleged only that the proceedings were dismissed

---

a question of fact.

[8] Additionally, a conclusion that a dismissal pursuant to Cal. Penal Code § 1382 could not, as a matter of law, ever constitute a favorable termination would create a perverse incentive for prosecutors to "hold . . . criminal charges in abeyance until a court is forced to dismiss the case" in order to "shield wrongdoing officers . . . from liability" for malicious prosecution. <u>See</u> <u>Rogers v. City of Amsterdam</u>, 303 F.3d 155, 160 (2d Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*0*

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

pursuant to Cal. Penal Code § 1382, unaccompanied by additional facts.  Id.  Similarly, in Kanouse, the district court granted summary judgment to the defendant on his malicious prosecution claim, finding that the plaintiff failed to establish a genuine dispute that the criminal proceeding against him was terminated in his favor.  2013 WL 5315374, at * 5. The court explained that the plaintiff cited "no . . . evidence" to support his contention that the dismissal of the charges against him pursuant to Cal. Penal Code § 1382 was a favorable termination, other than that "a Deputy District Attorney [stated] that [certain] witnesses would not testify, and thus the prosecution would not be able to proceed."  Id. The court did not state, however, that a dismissal pursuant to Cal. Penal Code § 1382 could never constitute a favorable termination.  See id.

Here, unlike in Garber and Kanouse, the jury heard evidence supporting a reasonable conclusion that the failure of the prosecution to bring the action to trial in a timely manner stemmed from the prosecutor's view that the action lacked merit.  See Stanley, 130 Cal. App. 3d at 464-65.  In this regard, the jury could have reasonably credited plaintiff's testimony about the events of October 3, 2009, and discredited the accounts of Stanley, Binder, and Nance.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations . . . [are a] jury function[] . . . .").  If the jury did so, then it could have reasonably inferred, based on plaintiff's testimony, that plaintiff did not threaten anyone prior to the arrival of Nance and Binder, see RT 67-68 (July 30, 2013), and did not make any attempt to resist or use force against Nance and Binder after they arrived at the apartment, id. at 71-81.  The jury could have also relied on the lack of an audio recording of Boyd's alleged 911 call, RT 128-34 (July 30, 2013), and the absence of any testimony from Boyd, RT 24-25 (Aug. 2, 2013) (closing argument of plaintiff's counsel on this point), in drawing this inference.  Based on this evidence, the jury could have reasonably concluded that the  prosecutor's failure to timely conduct a trial on the criminal threats and resisting arrest charges against plaintiff stemmed from the prosecutor's view that the charges lacked merit.  See Minasian, 80 Cal. App. 3d at 832.[9]

---

[9] Defendants also argue that the Court erroneously placed the burden on defendants of disproving that the proceedings terminated in plaintiff's favor.  Mot. JMOL 6. Defendants cite a portion of this Court's ruling on defendants' motions in limine, in which this Court stated that "the defense bears the burden of demonstrating that the charges were withdrawn 'on the basis of a compromise among the parties or for a cause that was not inconsistent with [the plaintiff's] guilt.'" Dkt. #180 at 3 (citing Awabdy, 368

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

b.      Failure to Rebut Presumption of Prosecutorial Independence

Defendants next argue that plaintiff failed to rebut the presumption that the prosecutor exercised independent judgment in bringing charges against plaintiff in the underlying criminal action.  Mot. JMOL 8-11; Reply Mot. JMOL 7-9.  This argument is unavailing.  A rebuttable presumption exists that "a prosecutor exercises independent judgment regarding the existence of probable cause in filing a complaint."  Smiddy v. Varney, 803 F.2d 1469, 1471 (9th Cir. 1986).  This presumption operates to "insulate[] arresting officers from liability for harm suffered after the prosecutor initiated formal prosecution."  Id.  The presumption can be overcome, however, if the plaintiff produces evidence that the arresting officers "knowingly submitted false information."  Id.; see also Harper v. City of Los Angeles, 533 F.3d 1010, 1027-28 (9th Cir. 2008) (presumption rebutted when jury heard evidence that defendant detectives were engaged in joint investigation with prosecutor, and failed to turn over key evidence).

The Court finds that plaintiff produced sufficient evidence at trial to rebut the presumption of prosecutorial independence, based on substantially the same evidence that supported the jury's conclusion regarding a favorable termination of the proceedings.  In this regard, if the jury credited plaintiff's account of the events of October 3, 2009, it could have reasonably concluded that the charges filed against him by Nance and Binder, and approved by Stanley, were baseless.  In addition to plaintiff's account of events, the jury could also have reasonably relied on the missing audio from the interviews of Robbins and plaintiff, and the cursory nature of the investigation conducted by Stanley in determining that defendants submitted false information to the prosecutor.  RT 5-17 (July 31, 2013); see also RT 29-30 (Aug. 2, 2013) (closing argument of plaintiff's counsel on this point).  In addition, plaintiff's counsel noted during his closing argument that defendants failed to produce Boyd as a witness in order to corroborate defendants' account of their conversation with Boyd.  RT 24-25 (Aug. 2, 2013).  Finally, Robbins corroborated substantial segments of plaintiff's testimony regarding his interaction with Nance and Binder, including plaintiff's testimony that he was sprayed with pepper spray after being ordered to get up from his chair, and was later dragged from the bedroom into the living room.  RT 20-27 (July 30, 2013).  Based on this evidence, the jury could have

F.3d at 1068).  This argument is unavailing because, as stated above, the Court ultimately instructed the jury that "plaintiff must prove that the criminal proceedings terminated in his favor."  Jury Instructions (Given) at 23, Dkt. #195.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

reasonably inferred that plaintiff did not make criminal threats or resist arrest, and that Nance, Binder, and Stanley therefore "knowingly submitted false information" to the prosecutor in support of the charges against plaintiff.  See Smiddy, 803 F.2d at 1471.

Defendants resist this conclusion on the grounds that plaintiff's account of events leading to the alleged malicious prosecution is insufficient on its own to rebut the presumption of prosecutorial independence.  Mot. JMOL 11 (citing Newman v. County of Orange, 457 F.3d 991, 995 (9th Cir. 2006)); Reply Mot. JMOL 7-9.  This argument is unavailing because, as stated above, plaintiff produced additional evidence to rebut the presumption beyond his own account of the events of October 3, 2009.

   c.  Evidence of Malice

Defendants contend that plaintiff failed to produce evidence that they acted with malice.  Mot. JMOL 11-12; Reply Mot. JMOL 9-11.  In support of this contention, defendants argue that they testified to harboring no "ill-will, animosity, or malicious intent" against plaintiff, and that plaintiff produced no evidence of actual malice by any of defendants.  Mot. JMOL 11-12.  The Court disagrees.  "Malice is established when 'the former suit was commenced in bad faith to vex, annoy, or wrong the adverse party.'" Ayala v. KC Envtl. Health, 426 F. Supp. 2d 1070, 1091 (E.D. Cal. 2006) (quoting Centers v. Dollar Mkts., 99 Cal. App. 2d 534, 541 (1950)).  It may be "inferred from all circumstances in the case."  Ayala, 426 F. Supp. 2d at 1091.  The jury expressly found that defendants' conduct in causing plaintiff to be subject to criminal prosecution was "malicious, oppressive, or in reckless disregard of [his] constitutional rights."  Dkt. #200, at 7.  The evidence cited in parts 1(a) and 1(b) above provided a reasonable basis for the jury's finding, because that evidence supported the inference that defendants knew or had reason to know that the charges against plaintiff were false.  See, e.g., RT 71-81 (July 30, 2013); RT 29-30 (Aug. 2, 2013); RT 5-12 (July 31, 2013); Albertson v. Raboff, 46 Cal. 2d 375, 383 (1956) (noting that "a person who attempts to establish a claim . . . knowing of its falsity can only be motivated by an improper purpose" and that malice exists when the "proceedings are instituted primarily for an improper purpose").

   d.  Probable Cause

"A decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie – but not conclusive – evidence of probable cause."  Awabdy, 368 F.3d at 1067 (citation omitted).  A plaintiff in a malicious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

prosecution action under 42 U.S.C. § 1983 can rebut this finding by showing that "the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." Id. Defendants argue that a probable cause determination was made by a judge in the underlying criminal proceeding, and that plaintiff failed to challenge that determination while the proceeding was pending. Mot. JMOL 12-13; Reply Mot. JMOL 11-12. Additionally, defendants argue that plaintiff produced no evidence that the probable cause determination was influenced by wrongful conduct of defendants. Id. Defendants argue that plaintiff is therefore barred from challenging the probable cause determination in this action. Id. The Court is unpersuaded by this argument. As stated above in parts 1(a) and 1(b), the jury heard evidence from which it could have reasonably inferred that defendants' account of their encounter with plaintiff was untruthful. This evidence of wrongful conduct by defendants is sufficient to remove the bar to plaintiff challenging the probable cause determination in this action. See Awabdy, 368 F.3d at 1068; McCutchen v. City of Montclair, 73 Cal. App. 4th 1138, 1147 (1999) ("When the officer misrepresents the nature of the evidence supporting probable cause and that issue is not raised at the preliminary hearing, a finding of probable cause at the preliminary hearing would not preclude relitigation of the issue of integrity of the evidence.").[10]

      2.      Evidence of Failure to Intervene

Defendants contend that plaintiff produced no evidence to support his claim of a failure to intervene on the part of defendants. Mot. JMOL 13-15; Reply Mot. JMOL 12. Plaintiff responds that a failure to intervene is not an independent claim, but instead is an alternative theory of liability for each of plaintiff's claims for excessive force, unlawful arrest, and malicious prosecution. Opp. Mot. JMOL 16-17. Therefore, plaintiff argues, defendants' contention has no bearing on whether defendants should be granted judgment as a matter of law. Id.

---

[10] Plaintiff argues that no prima facie showing of probable cause exists because he was charged by information with a misdemeanor, and was not held to answer at a preliminary hearing. Opp. Mot. JMOL 15. The Court need not address this argument because, as stated above, the Court finds that plaintiff is not barred from relitigating the issue of probable cause in this action because the record supports the reasonable inference that the probable cause determination was affected by wrongful conduct on the part of defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

The Court finds plaintiff's argument to be persuasive.  A failure to intervene is a "theory of liability that derives meaning from the underlying violation . . . , not a separate claim."  Claiborne v. Blauser, 2013 WL 1384995, at *5 (E.D. Cal. Apr. 4, 2013); see also Martinez v. Bryant, 2009 WL 1456399, at *1 (C.D. Cal. May 19, 2009) ("Failure to intervene is a type of conduct upon which a plaintiff may predicate liability for excessive force.").  The thrust of defendants' argument appears to be that plaintiff presented no evidence that defendant Nance had a "realistic opportunity" to intervene to stop defendant Binder from committing a constitutional violation against plaintiff, because Nance was positioned at the door to plaintiff's bedroom at the time that Binder encountered plaintiff.  Mot. JMOL 15; Reply Mot. JMOL 12.[11]  This argument is misplaced because plaintiff was not required to prove a failure to intervene by defendants in order to prevail on all of his claims.  See Motley v. Parks, 383 F.3d 1058, 1071 (9th Cir. 2004) (noting that liability can be predicated on personal participation in a constitutional violation, or a failure to intervene to stop that violation).

Moreover, the jury could have reasonably concluded that defendants Nance and Binder each had the opportunity to intervene to stop the other from conducting an unlawful arrest, using excessive force, or engaging in malicious prosecution.  In this regard, plaintiff testified that Nance and Binder were both in the bedroom during the encounter with plaintiff, and that both deputies interacted with plaintiff and used force against him.  RT 141 (July 30, 2013); Cunningham, 229 F.3d at 1289-90 (9th Cir. 2000) (noting that "officers can be held liable for failing to intercede only if they had an opportunity to intercede").

---

[11] Defendants also argue that plaintiff produced no evidence of a plan on the part of Nance or Binder to violate plaintiff's constitutional rights.  Mot. JMOL 14-15; Reply Mot. JMOL 12.  That argument is unavailing because evidence of such a plan is not a predicate for establishing liability on a failure to intervene theory.  Rather, the proper inquiry is whether Nance or Binder had an opportunity to intervene.  See Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

## IV.  DEFENDANTS' MOTION FOR A NEW TRIAL

### A.  Legal Standard

A court may grant a new trial if the jury's verdict is against the clear weight of the evidence.  Landes Const. Co., Inc. v. Royal Bank of Can., 833 F.2d 1365, 1371 (9th Cir. 1987).  In considering a Fed. R. Civ. P. 59 motion, the court may "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Id. at 1371-72 ("If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.").  However, the court should only grant a new trial if, without substituting its judgment for that of the jury, the court is firmly convinced that the jury made a mistake. Id. at 1372.

### B.  Discussion

Defendants advance eight grounds in support of their motion for a new trial.  The Court addresses each ground in turn.

#### 1.    Improper Introduction of Defendant Nance's Criminal Conviction

Federal Rule of Evidence 608 prohibits the introduction of extrinsic evidence of specific instances of a witness's conduct in order to attack the witness's character for truthfulness.  Fed. R. Evid. 608(b).  However, Federal Rule of Evidence 609 permits the introduction of evidence of a criminal conviction for an offense involving an act of dishonesty.  Id. 609(a)(2).  Evidence of such a conviction is not admissible if the "conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated." Id. 609(c)(1).

Defendants argue that they are entitled to a new trial because the Court improperly allowed introduction of a docket sheet showing a prior criminal conviction of defendant Nance, in violation of Federal Rules of Evidence 608 and 609.  Mot. New Trial 2-4; Reply Mot. New Trial 2-4.  In this regard, defendants argue that a Los Angeles County Superior Court order of dismissal demonstrates that no conviction existed at the time of trial.  Id. (citing dkt. #101, Ex. A).  Therefore, defendants argue, extrinsic evidence of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

the conviction was inadmissible under Fed. R. Evid. 608(b), and was not subject to the exception for criminal convictions involving dishonesty under Fed. R. Evid. 609(a)(2).[12]

Plaintiffs respond that the order of dismissal cited by defendants does not constitute a "pardon, annulment, [or] certificate of rehabilitation" under California law. Opp. Mot. New Trial 1-3.  The Court agrees.  The order of dismissal indicates that the court dismissed a felony information, thereby reducing a felony offense to a misdemeanor, and dismissed the complaint pursuant to Cal. Penal Code § 1203.4.  Dkt. #101, Ex. A.  Cal. Penal Code § 1203.4 provides that a criminal defendant may, under certain circumstances, be permitted to withdraw his guilty plea at the conclusion of his term of probation.  It does not indicate that Nance received a pardon or annulment.  The order also indicates that a separate procedure exists for obtaining a certificate of rehabilitation.  Dkt. #101, Ex. A (citing Cal. Penal Code § 4852.01, et seq.).  Accordingly, the Court finds that the evidence of Nance's prior conviction was properly admitted.  See Williams v. MacGillivray, 2003 WL 25781909, at *4 (S.D. Cal. Aug. 25, 2003) ("Although Plaintiff's conviction has been set aside [pursuant to Cal. Penal Code § 1203.4], the conviction remains admissible for both substantive and impeachment purposes.").

2.      Failure to Instruct on Prosecutorial Independence

Defendants argue that the Court erred by failing to give their requested jury instruction regarding the presumption of prosecutorial independence, and that this error affected the jury's finding on plaintiff's malicious prosecution claim.  Mot. New Trial 4-6; Reply Mot. New Trial 4-5.  The requested instruction reads as follows:

The District Attorney or prosecutor has sole discretion to determine whom to charge, what charges to file and to pursue, and what punishment to seek or to do one of these.  The jury is instructed not to question why the charges against plaintiff were dismissed after he was arrested.

---

[12] Defendants previously requested the exclusion of this evidence in their motions in limine, and the Court denied defendants' motion.  Dkt. #151.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

Mot. New Trial 4 (citing Dkt. #89, Proposed Jury Instruction 17). This argument is unavailing for two reasons. First, defendants' proposed instruction does not properly reflect the presumption of prosecutorial independence because it fails to state the key aspect of the presumption, namely, that police officers are not liable for damages suffered by a malicious prosecution plaintiff that are incurred after the prosecutor decides to file charges. See, e.g., Newman v. County of Orange, 457 F.3d 991, 993-94 (9th Cir. 2006).

Second, the requested instruction would have incorrectly instructed the jury on the "favorable termination" element of a malicious prosecution claim. As set forth in Section III(B)(1)(a), the jury must determine whether the underlying criminal proceeding terminated in plaintiff's favor. E.g., Minasian v. Sapse, 80 Cal. App. 3d 823, 827 (1978). Defendants' proposed instruction would have invaded the province of the jury by precluding them from making that determination. Accordingly, the Court did not err by declining to give defendants' proposed instruction.

      3.     Failure to instruct on Duty to Comply with Officers' Commands

Defendants contend that the Court erred by failing to instruct the jury that plaintiff had a duty to "reasonably comply with officer commands" if he "knew or should have known that he was being detained by a peace officer." Mot. New Trial 6-7; Reply Mot. New Trial 6-7. According to defendants, the Court's failure to give this instruction resulted in the jury receiving a "misleading and confusing impression" of the law governing plaintiff's encounter with the police. Mot. New Trial 6 (citing Cal. Penal Code § 834a).

The Court is unpersuaded by this argument because the requested instruction misstates California law. Cal. Penal Code § 834a states that, if a person knows or should know that he is being arrested by a peace officer, he has the "duty . . . to refrain from using force or any weapon to resist such arrest." Moreover, the Court instructed the jury as to the elements of the crime of resisting arrest, as defined by Cal. Penal Code § 148, dkt. #195 at 25, and also instructed the jury to consider "[w]hether the plaintiff was actively resisting arrest or attempting to evade arrest by flight," id. at 20. Therefore, to the extent that defendants argue that the jury did not consider plaintiff's behavior toward Nance and Binder when evaluating plaintiff's claims for unlawful arrest and excessive force, that argument is unpersuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

4.    Remarks of Plaintiff's Counsel During Closing Argument of Punitive Damages Phase

Defendants contend that they were prejudiced by remarks of plaintiff's counsel during his closing statement in the punitive damages phase of the trial. Mot. New Trial 7-9; Reply Mot. New Trial 7-9. In this regard, defendants argue that they were prejudiced by counsel's remarks regarding (1) the potential criminal sentence for defendants' alleged conduct, and (2) counsel's expression of his personal opinion regarding whether defendants were telling the truth. Id.

a.    Remarks Regarding Potential Criminal Sentences

The Court finds that defendants were not prejudiced by plaintiff's counsel's remarks about criminal sentencing for two reasons. First, the Court stated during plaintiff's counsel's closing argument that the discussion of criminal sentences was inappropriate, thereby decreasing the probability that the jury relied on them. RT, Aug. 20, 2013, at 43-45; CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841 ("Juries are presumed to follow the court's instructions."). Second, the punitive damages awarded by the jury were not clearly excessive. Rather, the amount, $50,000 per defendant, was significantly less than the $850,000 award of compensatory damages. See Dkt. #'s 199, 214; Kehr v. Smith Barney, Harris Upham & Co., Inc., 736 F.2d 1283, 1286 (9th Cir. 1984) ("[U]nlike some cases where attorney misconduct required a new trial, the jury's award of damages in this case was not excessive.").

b.    Remarks Regarding Whether Defendants Were Telling the Truth

The Court finds that defendants' argument on this point is unavailing because it does not appear that plaintiff's counsel expressed his opinion regarding whether defendants testified truthfully. Rather, counsel argued to the jury that defendants had been untruthful by asserting that they lied during their testimony. This fact is apparent from an examination of the transcript excerpt appended to defendants' motion for a new trial. See, e.g., Mot. New Trial, Ex. A, at 7 (containing plaintiff's counsel's statement that defendants "came in here and lied about [the events giving rise to this action] and continued to obstruct justice until today"). Therefore, plaintiff's counsel's remarks were not improper. Rutter Group, Fed. Civ. Trials and Evid., Ch. 14:78. Moreover, even if the remarks were improper, the size of the punitive damages award relative to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

compensatory damages award suggests that the remarks did not cause prejudice to defendants.

        5.      Exclusion of Defendants' Police Practices Expert

        Defendants argue that the Court improperly excluded their expert witness on police practices, while allowing plaintiff's police practices expert to testify. Mot. New Trial 9-11; Reply Mot. New Trial 9-10. In this regard, defendants argue that the exclusion occurred as a result of the Court's partiality, in light of the fact that the judge who made the ruling later recused himself. Id. Defendants argue that this exclusion prejudiced them because they were unable to use the expert to "explain the policy and procedures" of Los Angeles County Deputy Sheriffs to the jury. Plaintiff responds that defendants failed to address this issue when they asked this Court to reconsider the previous trial judge's evidentiary rulings, and that their request for the Court to consider this issue for the first time post-trial is untimely. Opp. Mot. New Trial 12-13. In addition, plaintiff argues that defendants did not suffer prejudice from this exclusion. Id. at 13.

        The Court finds plaintiff's arguments persuasive. Defendants requested clarification from this Court regarding one of the previous trial judge's evidentiary rulings by motion filed on July 25, 2013. Dkt. #185. However, defendants failed to request that this Court reconsider the previous trial judge's exclusion of defendant's expert before trial. Moreover, the Court concludes that defendants were not prejudiced by this exclusion because defendants were able to introduce evidence of defendants' "policy and procedures" through the testimony of defendants and the other deputy sheriffs that testified on behalf of defendants. E.g., RT 18-22 (Aug. 1, 2013) (testimony of Jennifer Roth).

        6.      Failure to Specify Amount of Damages as to Each Defendant in Special Verdict Form

        Defendants argue that their motion for a new trial should be granted because the special verdict form used in the liability phase of the trial did not provide for the specification of the amount of damages awarded as to each defendant. Mot. New Trial 11-12; Reply Mot. New Trial 10-11. Plaintiff responds that defendants never objected to the special verdict form on these grounds prior to its submission to the jury. Opp. Mot. New Trial 13-14. Defendants do not dispute plaintiff's assertion. Mot. New Trial 11; Reply Mot. New Trial 10 ("There was neither an inquiry nor a discussion regarding a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|---|---|---|---|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

breakdown of the damages by the individual defendants"). The Court therefore finds that defendants' objection to the special verdict form on these grounds is untimely. See Guy v. City of San Diego, 608 F.3d 582, 586 (9th Cir. 2010) (stating that defendant waived his objection to a special verdict form "because he did not object to [it] when the court submitted it to the jury").

Defendants' argument also lacks merit. A special verdict form is proper if it contains questions "adequate to obtain a jury determination of the factual issues essential to judgment." Mateyko v. Felix, 924 F.2d 824, 827 (9th Cir. 1990). Here, the special verdict form contained questions sufficient to determine (1) the liability of each defendant regarding each of plaintiff's three claims and (2) the damages suffered by plaintiff. See Dkt. #200. Defendants cite no authority, and the Court is aware of none, that supports defendants' contention that a special verdict form must provide for a breakdown of a damage award as to each defendant. Indeed, the Court's approach is consistent with standard practice in multiple defendant civil rights actions. See Gagnon v. Ball, 696 F.2d 17, 19 n.2 (2d Cir. 1982) ("Where . . . defendants . . . are liable for causing the same injury, a jury given special interrogatories should be asked what amount of [total] damages the plaintiff has suffered.").[13]

7.     Witness Testimony Regarding Cal. Penal Code § 422

Defendants contend that they suffered prejudice when Deputy Abdulfattah, one of plaintiff's witnesses, testified about the meaning of Cal. Penal Code § 422, thereby

---

[13] The Gagnon court noted that it may be advisable to allow a jury to designate the damages suffered by plaintiff from each asserted injury in cases where the various defendants are not all liable for the same injuries. 696 F.2d at 19 n.2. However, in the present case, defendants objected to the use of such a special verdict form. RT 118 (Aug.1, 2013). Therefore, even if it was error not to apportion the damages award by claim, the error was invited and does not warrant granting a new trial. See, e.g., Sovak v. Chugai Pharmaceutical Co., 280 F.3d 1266, 1270 (9th Cir. 2002). Finally, even if the Court had provided a special verdict form, over defendants' objection, that apportioned the damages by claim, the damages award arising from the malicious prosecution claim would not have been apportioned as to each defendant because they are jointly and severally liable on that claim. See Gagnon, 696 F.2d at 19 n.2; Jackson v. Yarbray, 179 Cal. App. 4th 75, 98 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*0*

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

invading the province of the Court.  Mot. New Trial 12-13; Reply Mot. New Trial 11-12. The Court is unable to discern how this testimony prejudiced defendants, and defendants provide no explanation of how they were prejudiced.  Moreover, the Court eventually struck this testimony and instructed the jury to disregard it.  RT 8-9 (Aug. 1, 2013).  This measure was sufficient to cure any potential prejudice suffered by defendants.  See CSX Transp., 556 U.S. at 841.

       8.     Testimony of Sergeant Powell

     Defendants' final contention is that the Court improperly precluded Sergeant John B. Powell from testifying at trial to explain the absence of an audio track in the interviews conducted by defendant Stanley of Robbins and plaintiff.  Mot. New Trial 13; Reply Mot. New Trial 12-13, 15-16 ("Day Decl.").  Defendants argue that they were prejudiced by their inability to call Sergeant Powell as a witness because plaintiff's counsel emphasized the missing audio track when arguing to the jury that defendants had destroyed evidence. Reply Mot. New Trial 12-13.  In addition, defendants argue that the previous trial judge ordered defendants, at a pre-trial hearing on May 20, 2013, to provide a witness, other than defendant Stanley, to explain the absence of the audio track.  Day Decl.  However, defendants aver that the previous trial judge gave this order off the record.

     Plaintiff responds that the previous trial judge gave no such order.  Opp. Mot. New Trial 17-18.  In addition, plaintiff argues that this issue has already been litigated and decided in this Court's order dated July 23, 2013, dkt. #180.  The Court finds plaintiff's second argument persuasive, and therefore need not resolve the dispute regarding the substance of the previous trial judge's order.

     The Court ruled in its July 23, 2013 order that exclusion of Sergeant Powell's testimony was warranted because he was not timely disclosed as a witness pursuant to Fed. R. Civ. P. 26.  Dkt. #180 at 5-6.  The Court then conducted the five-factor analysis set forth in Dey, L.P. v. Ivax Pharmaceuticals, Inc., 233 F.R.D. 567, 571 (C.D. Cal. 2005), and concluded that exclusion of Sergeant Powell as a witness was appropriate pursuant to Fed. R. Civ. P. 37.  The Court declines to revisit that ruling here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8145-CAS (SHx) | Date | December 16, 2013 |
|----------|----------------------|------|-------------------|
| Title | TROY J. DUGAN V. CHRISTOPHER NANCE, ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, defendants' motion for judgment as a matter of law is DENIED.  Defendants' motion for a new trial is also DENIED.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |